FILED-ED4

04 MAR -2 PM 2: 23

CLERK
U.SCHERYL HUND, COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHERYL HUND,                                )
                                            )
                    Plaintiff,              )
                                            )
        v.                                  )
                                            )
BLATT, HASENMILLER,                         )
LEIBSKER & MOORE LLC,                       )
                                            )
                    Defendant.              )

**JUDGE LEINENWEBER**

**04C 1634**

**MAGISTRATE JUDGE LEVIN**

**DOCKETED**
MAR 3 - 2004

## COMPLAINT – CLASS ACTION

## INTRODUCTION

1.    Plaintiff Cheryl Hund  brings this action against a debt collector to recover damages for violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDPCA"). Plaintiff complains that defendant seeks to collect excessive and unauthorized interest on  old credit card debts acquired by bad debt buyers, a number of whom are represented by defendant.

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce),  and 15 U.S.C. §1692k (Fair Debt Collection Practices Act).   Defendant does business in the District.

## PARTIES

3.    Plaintiff is an individual who resides in Galesburg, Illinois.

4.    Plaintiff is a  "consumer" as defined in the FDCPA, 15 U.S.C. §1692a(3), in that defendant sought to collect from her a purported debt  incurred for personal, family or

1

1—1

household purposes.

5.     Defendant Blatt, Hasenmiller, Leibsker & Moore, LLC ("Blatt LLC") is a law firm organized as a limited liability company under Illinois law.  Its principal business consists of the collection of consumer debts owed to others.  Its principal place of business is located at 2 N. LaSalle Street, Suite 900, Chicago, IL  60602.

6.     A number of Blatt LLC's clients are companies engaged in the business of purchasing  bad debts allegedly owed by consumers, including large amounts of credit card debts, for a small fraction of face value.  Blatt  LLC  seeks to enforce the debts against the consumers on behalf of these companies.  The original creditors do not retain any interest in the debts.

7.     These bad debt buyers include PRA III, LLC; Unifund CCR; MKM Acquisitions; and others.

8.     These bad debt buyers are  not and have never been chartered or regulated as a bank, savings and loan association, or credit union.

9.     These bad debt buyers do not hold and have never held a license under the Illinois Consumer Installment Loan Act or  Illinois Sales Finance Agency Act.

10.     These bad debt buyers are not and have never been lenders.  They do  not extend credit.

11.     On information and belief, all accounts such bad debt buyers attempt to collect are purportedly in default when acquired.  On information and belief, they pay less than 10 cents on the dollar for them, and acquire them solely for the purpose of collecting them rather than for the purpose of extending credit.  They do  not extend new credit on the debts  in any manner.

12.     They do not send monthly statements to debtors, as is required of a "lender"

under §4.2 of the Illinois Interest Act, 815 ILCS 205/4.2, or follow any of the other procedures required of a "lender" under that section.  They also do not comply with any of the corresponding provisions of the Truth in Lending Act and Regulation Z.

13.     Bad debt buyers which fit the description in paragraphs 6-12 are hereinafter referred to as "unregulated entities."

## FACTS

14.     PRA III, LLC, an unregulated entity,  acquired Cheryl  Hund's purported credit card debt after it was supposedly  in default.

15.     Prior to August 25, 2003, PRA III, LLC hired Blatt LLC to collect the purported debt.

16.     On August 25, 2003, Blatt LLC filed a lawsuit against plaintiff on behalf of PRA III, LLC to collect the alleged debt.  The lawsuit is still pending.

17.     A copy of the complaint filed by Blatt LLC is attached as Exhibit A.

18.     The complaint included a purported "statement of account" showing that Blatt LLC was attempting to collect interest on the account at a rate in excess of 9% per annum for the period after it was acquired by an unregulated entity, PRA III, LLC.  On information and belief, the $7,240.91 represents the balance on the account when PRA III, LLC acquired it, which was no later than April 21, 1999.  (Plaintiff's daughter, who obtained the credit card, filed bankruptcy on that date; at the time the account was still held by Associates.)  The $6,051.12 interest represents interest added to the account by PRA III, LLC through April 4, 2003.   In order for four years' interest on $7,240.91 to amount to $6,051.12, the rate would have to exceed 20%.

19.     Under Illinois law, an unregulated entity cannot enter into an agreement to

3

charge more than 9% simple interest and cannot charge more than 5% simple interest in the absence of an agreement.

20.    Section 5 of the Interest Act, 815 ILCS 205/5, provides:

**205/5. Greater rate of interest;  prohibition**

**§ 5. No person or corporation shall directly or indirectly accept or receive, in money, goods, discounts or thing in action, or in any other way, any greater sum or greater value for the loan, forbearance or discount of any money, goods or thing in action, than is expressly authorized by this Act or other laws of this State.**

21.    Section 2 of the Interest Act provides:

**205/2. Interest rate;  creditors**

**§ 2. Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing;  on money lent or advanced for the use of another;  on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance;  on money received to the use of another and retained without the owner's knowledge;  and on money withheld by an unreasonable and vexatious delay of payment.  In the absence of an agreement between the creditor and debtor governing interest charges, upon 30 days' written notice to the debtor, an assignee or agent of the creditor may charge and collect interest as provided in this Section on behalf of a creditor.**

PRA III, LLC is not acting on behalf of any creditor, but solely on behalf of itself.

22.    Section 4 of the Interest Act, 815 ILCS 205/4, provides:

**§ 4. General interest rate.**

**(1) In all written contracts it shall be lawful for the parties to stipulate or agree that 9% per annum, or any less sum of interest, shall be taken and paid upon every $100 of money loaned or in any manner due and owing from any person to any other person or corporation in this state, and after that rate for a greater or less sum, or for a longer or shorter time, except as herein provided. . . .**

23.    An entity which has the characteristics described in paragraphs 11-17 is

hereinafter referred to as an "unregulated entity."

24.    Under Illinois law, an unregulated entity cannot enter into an agreement to charge more than 9% simple interest and cannot charge more than 5% simple interest in the absence of an agreement.

25.    Section 5 of the Interest Act, 815 ILCS 205/5, provides:

**205/5. Greater rate of interest;  prohibition**

**§ 5. No person or corporation shall directly or indirectly accept or receive, in money, goods, discounts or thing in action, or in any other way, any greater sum or greater value for the loan, forbearance or discount of any money, goods or thing in action, than is expressly authorized by this Act or other laws of this State.**

26.    The general rate of interest in Illinois is 5% in the absence of an agreement, under §2 of the Interest Act, 815 ILCS 205/2, which  provides:

**205/2. Interest rate;  creditors**

**§ 2. Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing;  on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance;  on money received to the use of another and retained without the owner's knowledge;  and on money withheld by an unreasonable and vexatious delay of payment.  In the absence of an agreement between the creditor and debtor governing interest charges, upon 30 days' written notice to the debtor, an assignee or agent of the creditor may charge and collect interest as provided in this Section on behalf of a creditor.**

27.    Illinois permits parties to agree to charge up to 9% under §4 of the Interest Act, 815 ILCS 205/4, which provides:

**§ 4. General interest rate.**

**(1) In all written contracts it shall be lawful for the parties to stipulate or agree that 9% per annum, or any less sum of interest, shall be taken and paid upon**

5

every $100 of money loaned or in any manner due and owing from any person to any other person or corporation in this state, and after that rate for a greater or less sum, or for a longer or shorter time, except as herein provided. . . .

28.     The only provision that could possibly confer authority to charge more 5% or 9% on a credit card is §4.2 of the Interest Act, 815 ILCS 205/4.2, which allows "lenders" and certain regulated entities to charge higher rates:

**205/4.2. Revolving credit;  billing statements;  disclosures**

**§ 4.2. Revolving credit;  billing statements;  disclosures.  On a revolving credit which complies with subparagraphs (a), (b), (c), (d) and (e) of this Section 4.2, it is lawful for any bank that has its main office or, after May 31, 1997, a branch in this State, a state or federal savings and loan association with its main office in this State, a state or federal credit union with its main office in this State, or a lender licensed under the Consumer Finance Act, [FN1] the Consumer Installment Loan Act [FN2] or the Sales Finance Agency Act, [FN3] as such Acts are now and hereafter amended, to receive or contract to receive and collect interest in any amount or at any rate agreed upon by the parties to the revolving credit arrangement.  It is lawful for any other lender to receive or contract to receive and collect interest in an amount not in excess of 1 ½ % per month of either the average daily unpaid balance of the principal of the debt during the billing cycle, or of the unpaid balance of the debt on approximately the same day of the billing cycle.  If a lender under a revolving credit arrangement notifies the debtor at least 30 days in advance of any lawful increase in the amount or rate of interest to be charged under the revolving credit arrangement, and the debtor, after the effective date of such notice, incurs new debt pursuant to the revolving credit arrangement, the increased interest amount or rate may be applied only to any such new debt incurred under the revolving credit arrangement. For purposes of determining the balances to which the increased interest rate applies, all payments and other credits may be deemed to be applied to the balance existing prior to the change in rate until that balance is paid in full. The face amount of the drafts, items, orders for the payment of money, evidences of debt, or similar written instruments received by the lender in connection with the revolving credit, less the amounts applicable to principal from time to time paid thereon by the debtor, are the unpaid balance of the debt upon which the interest is computed. If the billing cycle is not monthly, the maximum interest rate for the billing cycle is the percentage which bears the same relation to the monthly percentage provided for in the preceding sentence as the number of days in the billing cycle bears to 30. For the purposes of the foregoing computation, a "month" is**

6

deemed to be any time of 30 consecutive days. In addition to the interest charge provided for, it is lawful to receive, contract for or collect a charge not exceeding 25 cents for each transaction in which a loan or advance is made under the revolving credit or in lieu of this additional charge an annual fee for the privilege of receiving and using the revolving credit in an amount not exceeding $20. In addition, with respect to revolving credit secured by an interest in real estate, it is also lawful to receive, contract for or collect fees lawfully paid to any public officer or agency to record, file or release the security, and costs and disbursements actually incurred for any title insurance, title examination, abstract of title, survey, appraisal, escrow fees, and fees paid to a trustee in connection with a trust deed.

(a) At or before the date a bill or statement is first rendered to the debtor under a revolving credit arrangement, the lender must mail or deliver to the debtor a written description of the conditions under which a charge for interest may be made and the method, including the rate, of computing these interest charges. The rate of interest must be expressed as an annual percentage rate.

(b) If during any billing cycle any debit or credit entry is made to a debtor's revolving credit account, and if at the end of that billing cycle there is an unpaid balance owing to the lender from the debtor, the lender must give to the debtor the following information within a reasonable time after the end of the billing cycle:

    (i) the unpaid balance at the beginning of the billing cycle;

    (ii) the date and amount of all loans or advances made during the billing cycle, which information may be supplied by enclosing a copy of the drafts, items, orders for the payment of money, evidences of debt or similar written instruments presented to the lender during the billing cycle;

    (iii) the payments by the debtor to the lender and any other credits to the debtor during the billing cycle;

    (iv) the amount of interest and other charges, if any, charged to the debtor's account during the billing cycle;

    (v) the amount which must be currently paid by the debtor and the date on which that amount must be paid in order to avoid delinquency;

    (vi) the total amount remaining unpaid at the end of the billing cycle and the right of the debtor to prepay that amount in full without penalty;

and

(vii) information required by (iv), (v) and (vi) must be set forth in type of equal size and equal conspicuousness.

(c) The revolving credit arrangement may provide for the payment by the debtor and receipt by the lender of all costs and disbursements, including reasonable attorney's fees, incurred by the lender in legal proceedings to collect or enforce the debt in the event of delinquency by the debtor or in the event of a breach of any obligation of the debtor under the arrangement.

(d) The lender under a revolving credit arrangement may provide credit life insurance or credit accident and health insurance, or both, with respect to the debtor and may charge the debtor therefor. Credit life insurance and credit accident and health insurance, and any charge therefor made to the debtor, shall comply with Article IX1/2 of the Illinois Insurance Code, as now or hereafter amended [215 ILCS 5/155.51 et seq.], and all lawful requirements of the Director of Insurance related thereto. This insurance is in force with respect to each loan or advance made under a revolving credit arrangement as soon as the loan or advance is made. The purchase of this insurance from an agent, broker or insurer specified by the lender may not be a condition precedent to the revolving credit arrangement or to the making of any loan or advance thereunder.

(e) Whenever interest is contracted for or received under this Section, no amount in addition to the charges authorized by this Act may be directly or indirectly charged, contracted for or received whether as interest, service charges, costs of investigations or enforcement or otherwise.

(f) The lender under a revolving credit arrangement must compute at year end the total amount charged to the debtor's account during the year, including service charges, finance charges, late charges and any other charges authorized by this Act, and upon request must furnish such information to the debtor within 30 days after the end of the year, or if the account has been terminated during such year, may give such requested information within 30 days after such termination. The lender shall annually inform the debtor of his right to obtain such information.

(g) A lender who complies with the federal Truth in Lending Act, amendments thereto [15 U.S.C. 1601 et seq.], and any regulations issued or which may be issued thereunder, shall be deemed to be in compliance with the provisions of subparagraphs (a) and (b) of this Section. . ..

29.     Since PRA III, LLC was not a lender or regulated entity specified in §4.2, it

had no authority to charge or receive interest at more than 5% per annum simple interest on a credit

card debt which it purchases, unless the account agreement provides for a reduction in rates by

notice to not more than 9%, and the procedures in the account agreement were followed.

30.     The fact that a bad debt buyer may purchase the rights of its assignor does not

alter this conclusion. A "sales finance agency", referred to in §4.2 of the Interest Act, is by its very

nature an assignee of consumer paper. Yet, it needs a license from the Department of Financial

Institutions to charge more than 9% interest on a credit card debt.

## FDCPA VIOLATION

31.     Blatt LLC violated the FDCPA, 15 U.S.C. §§1692e, 1692e(2), 1692e(10),

1692f, and 1692f(1) by collecting and attempting to collect interest on behalf of unregulated entities

at rates permitted only to a regulated entity.

32.     Section 1692e provides:

**§ 1692e.     False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2)     The false representation of--**

**(A)     the character, amount, or legal status of any debt; . . .**

**(10)     The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

33.     Section 1692f provides:

**§ 1692f.     Unfair practices [Section 808 of P.L.]**

**A debt collector may not use unfair or unconscionable means to collect**

**or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

> **(1)      The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .**

## CLASS ALLEGATIONS

34.      Plaintiff brings this action on behalf of a class. The class consists of all natural persons with Illinois addresses who satisfy the following criteria:

> a.      An unregulated entity owned their alleged credit card debt;
>
> b.      Blatt LLC attempted to collect the debt;
>
> c.      The amount sought included interest on the account at more than 5% per annum simple interest for periods when it was owned by an unregulated entity.
>
> d.      Collection action occurred on or after a date one year prior to the filing of this action, and less than 20 days after the filing of this action.

35.      Persons against whom a judgment including the interest in question was entered are excluded from the class.

36.      The class members are so numerous that joinder is impracticable. On information and belief, there are more than 50 members.

37.      There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the collection of interest by an unregulated entity at a rate in excess of 5% per annum simple interest violates (a) Illinois law and (b) the FDCPA.

38.      Plaintiff will fairly and adequately represent the interests of the class

10

members.  Plaintiff has retained counsel experienced in consumer credit and debt collection abuse

cases.

39.    A class action is an appropriate means of adjudicating this dispute.

Individual cases are not economically feasible.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff

and the class members and against defendant for:

a.    Statutory damages ($1,000 to plaintiff and the lesser of $500,000 or

1% of net worth for the class) against defendant;

b.    Actual damages to all persons who paid the excess interest;

c.    Attorney's fees, litigation expenses and costs of suit;

d.    Such other or further relief as the Court deems proper.

_____
Daniel A. Edelman


Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Danita Ivory
EDELMAN, COMBS & LATTURNER, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## **JURY DEMAND**

Plaintiff demands trial by jury.

_____
Daniel A. Edelman

I:\case\blatt11.442\pleading\blatt.CMPLT.WPD

# EXHIBIT A

IN THE CIRCUIT COURT OF THE NINTH JUDIC. CIRCUIT
KNOX COUNTY, ILLINOIS

PRA III, LLC

        Plaintiff

vs.

CHERYL J HUND

        Defendant

Case No. 03-LM-289

Amount Claimed $ 13287.09 + costs

# FILED
KNOX CO., IL

## AUG 2 5 2003

KELLY CHEESMAN
Clerk of the Circuit Court
_____Deputy

## COMPLAINT

NOW COMES the Plaintiff, Pra Iii, Llc, and complaining of the Defendant, claims as follows:

1.    Plaintiff, Pra Iii, Llc, is a limited liability company authorized to do business in the State of Illinois and the Defendant, Cheryl J Hund, is a resident of Knox County, Illinois.

2.    The Defendant, Cheryl J Hund, opened a ASSOCIATES FINANCIAL SERVICES charge account with Plaintiff agreeing to make monthly payments as required by the terms of the Charge Agreement, for purchases charged to the account.

3.    The Plaintiff, Pra Iii, Llc, did take an assignment of said Charge Account in good faith, for value and in regular course of business.

4.    The Defendant, Cheryl J Hund, did make purchases and charged same to the account, but the Defendant, Cheryl J Hund, failed to make the monthly payments called for on the account. Attached hereto and incorporated herein is Plaintiff's account stated in the amount of $ 13287.09. See Plaintiff's Exhibit No. 1.

5.    Plaintiff, Pra Iii, Llc, declared Defendant, Cheryl J Hund, to be in default and demands payment of balance.

WHEREFORE, the Plaintiff, Pra Iii, Llc, prays for judgment against the Defendant, Cheryl J Hund, in the amount of $ 13287.09 plus costs and/or interest to accrue.

PRA III, LLC

Attorney for Plaintiff

Blatt, Hasenmiller, Leibsker & Moore, LLC
Attorneys for Plaintiff
211 Landmark Dr. Suite E5
Normal , Illinois 61761
(309) 268-4100

Ref # 1462992

## THIS COMMUNICATION IS FROM A DEBT COLLECTOR

STATE OF VA
CITY OF VIRGINIA BEACH

P-1

### AFFIDAVIT OF INDEBTEDNESS

1462992

The undersigned, being duly sworn, deposes and states that he/she is
an employee/agent of: PRA III, LLC
and has knowledge of the account balance, and is duly authorized to make
this affidavit.

Affiant states that the amounts shown below are taken/calculated from
the original books and records of the above named plaintiff, and based
on information and belief, affiant states that the amount due to
PRA III, LLC
by CHERYL J HUND
on account(s): 4621200890452383

for purchases by or services rendered to the above named defendant(s) or
member(s) of his/her family is as follows:

|               |    |          |
|---------------|----|----------|
| Balance:      | $  | 7240.91  |
| Plus Interest:| $  | 6051.12  |
| Less Payments:| $  | 0.00     |
| Balance Due:  | $  | 13292.03 |

Affiant states that the amount shown above is true and correct and that
there are no setoffs or counterclaims available to defendant(s).
Further affiant sayeth not.

_Elaine Fork_
Affiant

_____LEGAL SPECIALIST_____

Title

Subscribed and Sworn to Before me

__4th__ day of __April__, 20 __03__

_____
Notary Public

William L. Robbins, Jr.
NOTARY PUBLIC
Commonwealth of Virginia
My Commission Expires
AUGUST 31, 2005

My Commission Expires: _____

Reference #: 1462992
Account #: 4621200890452383

Ex #1

AFFPORT(05 /02 )KW2


#1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

**Plaintiff(s): Cheryl Hund**

County of Residence: Knox County

Plaintiff's Atty:  Edelman, Combs, and Latturner
                   120 S. LaSalle St, 18th Floor
                   Chicago, IL 60603
                   (312) 739 - 4200

**Defendant(s): Blatt, Hasenmiller, Leibsker & Moore, LLC**

County of Residence:

Defendant's Atty:

DOCKETED
MAR 3 - 2004

JUDGE LEINENWEBER

04C 1634

MAGISTRATE JUDGE LEVIN

II. Basis of Jurisdiction:     **3. Federal Question**

III. Citizenship of Principal Parties **(Diversity Cases Only)**

    Plaintiff:-**N/A**

    Defendant:-**N/A**

IV. Origin :     **1. Original Proceeding**

V. Nature of Suit:     **890 Other Statutory Actions**

VI.Cause of Action:     **Violation of Fair Debt Collection Practices Act, 15 U.S.C. § 1692.**

VII. Requested in Complaint

    Class Action:**Yes**

    Dollar Demand:

    Jury Demand:**Yes**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

**Signature:**

**Date:** 3/2/04

CLERK U.S. DISTRICT COURT
04 MAR -2 PM 2: 23
FILED-EOD

1-2

# UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS

In the Matter of: CHERYL HUND v. BLATT, HASENMILLER, LEIBSKER & MOORE, LLC

JUDGE LEINENWEBER

Case Number: **04C 1634**

MAGISTRATE JUDGE LEVIN

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR: **PLAINTIFF**

CHERYL HUND

DOCKETED

MAR 3 - 2004

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME  Daniel A. Edelman | NAME  Cathleen M. Combs |
| FIRM  Edelman, Combs & Latturner, LLC | FIRM  Edelman, Combs & Latturner, LLC |
| STREET ADDRESS  120 S. LaSalle Street, 18th Floor | STREET ADDRESS  120 S. LaSalle Street, 18th |
| CITY/STATE/ZIP  Chicago, Illinois 60603 | CITY/STATE/ZIP  Chicago, Illinois 60603 |
| TELEPHONE NUMBER  (312) 739-4200 | TELEPHONE NUMBER  (312) 739-4200 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 00712094 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 00472840 |
| MEMBER OF TRIAL BAR?    YES  X   NO  ☐ | MEMBER OF TRIAL BAR?    YES  X   NO  ☐ |
| TRIAL ATTORNEY?    YES  X   NO  ☐ | TRIAL ATTORNEY?    YES  X   NO  ☐ |
| | DESIGNATED AS LOCAL COUNSEL?   YES  ☐   NO  X |
| (C) | (D) |
| SIGNATURE | SIGNATURE |
| NAME  James O. Latturner | NAME  Danita Ivory |
| FIRM  Edelman, Combs & Latturner, LLC | FIRM  Edelman, Combs & Latturner, LLC |
| STREET ADDRESS  120 S. LaSalle Street, 18th Floor | STREET ADDRESS  120 S. LaSalle Street, 18th Floor |
| CITY/STATE/ZIP  Chicago, Illinois 60603 | CITY/STATE/ZIP  Chicago, IL 60603 |
| TELEPHONE NUMBER  (312) 739-4200 | TELEPHONE NUMBER  (312) 739-4200 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 01588095 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6272456 |
| MEMBER OF TRIAL BAR?    YES  X   NO  ☐ | MEMBER OF TRIAL BAR?    YES  ☐   NO  X |
| TRIAL ATTORNEY?    YES  X   NO  ☐ | TRIAL ATTORNEY?    YES  ☐   NO  X |
| DESIGNATED AS LOCAL COUNSEL?   YES  ☐   NO  X | DESIGNATED AS LOCAL?   YES  ☐   NO  X |

1-3