UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED SEP 16 2004
SEP 15 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| CHERYL HUND, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04 C 1634 |
| | ) | |
| vs. | ) | Judge Leinenweber |
| | ) | |
| BLATT, HASENMILLER, LEIBSKER & MOORE LLC, | ) | Magistrate Judge Levin |
| | ) | |
| Defendants. | ) | |

**NOTICE OF FILING**

**TO:**   Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Edelman, Combs & Latturner, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL 60603

**PLEASE TAKE NOTICE** that on the **9th** day of **September 2004**, we caused to be filed with the United States District Court, Northern District of Illinois, Eastern Division, **Defendant's Memorandum of Law in Support of Motion for Summary Judgment**, a copy of which is herewith served upon you.

HINSHAW & CULBERTSON LLP

_____
Attorneys for Defendant

David M. Schultz
Todd P. Stelter
222 N. LaSalle Street, Suite 300
Chicago, IL 60601-1081
(312) 704-3000
Fax: (312) 704-3001

**PROOF OF SERVICE**

I, the undersigned, on oath, state that I served the above and foregoing Notice by mailing a copy to the attorneys of record listed on the attached Service List from 222 N. LaSalle Street, Chicago, Illinois 60601-1081 on the 15th of September 2004, with proper postage prepaid.

_____
Lori DiGrazia

5824517v1 839661

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHERYL HUND, | ) | |
| Plaintiff, | ) ) ) | Case No. 04 C 1634 |
| vs. | ) ) | Judge Leinenweber |
| BLATT, HASENMILLER, LEIBSKER & MOORE LLC, | ) ) ) ) | Magistrate Judge Levin |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, BLATT, HASENMILLER, LEIBSKER & MOORE LLC ("the Blatt firm") by its attorneys David M. Schultz and Todd P. Stelter and for its Memorandum of Law in Support of Defendant's Motion for Summary Judgment states as follows:

### I. INTRODUCTION

Plaintiff applied for a credit card and was issued a credit card by Associates Financial Services. Plaintiff defaulted on her credit card account. As a result of plaintiff's default, interest accrued on her account. Plaintiff does not set forth the amount of interest she was charged by Associates Financial Services. Plaintiff's credit card debt was purchased by PRA III, LLC ("PRA"). Plaintiff claims that when her account was sold to PRA, the amount of interest PRA could charge on her account should have been reduced from the amount she agreed to pay Associates Financial Services, to 5%. PRA is not a party to this suit.[1]

---

[1] PRA has filed a claim against plaintiff in the Circuit Court of Knox County, Illinois Case No. 03 LM 289.

BLATT, HASENMILLER, LEIBSKER & MOORE LLC is a law firm that was hired by PRA to collect on plaintiff's debt account. Plaintiff claims that the Blatt firm violated the Fair Debt Collection Practices Act ("FDCPA") by attempting to collect her defaulted credit card debt because it included interest over 5% charged by PRA. Plaintiff claims that under the Illinois Interest Act, debt buyers can charge only 5% interest on defaulted debt and debt collectors, such as the Blatt firm, can only attempt to collect interest at 5%. There is no basis for plaintiff's reading of the Act. In fact, plaintiff's reading of the Act has been rejected several times. *See Vickey v. Asset Acceptance, LLC*, 2004 WL 1510026 (N.D. Ill. 2004), attached hereto as Exhibit E ("Ex. E"); *Olvera v. Blitt & Gaines*, 2004 WL 887372 (N.D. Ill. 2004), attached hereto as Exhibit F ("Ex. F"); and Judge Kennelly's Order in *Olvera* denying plaintiff's motion for reconsideration, attached hereto as Exhibit G ("Ex. G").

*Vickey* and *Olvera* hold that the Illinois Interest Act (1) does not prohibit a debt buyer from charging interest over 5%, and (2) does not prohibit a debt collector from attempting to collect interest at the rate agreed between the plaintiff and her original creditor. Since the Illinois Interest Act does not prohibit the Blatt firm from attempting to collect interest over 5% on plaintiff's account, the Blatt firm did not engage in any conduct in violation of the FDCPA. Plaintiff's FDCPA claims are entirely premised on alleged violations of the Illinois Interest Act - plaintiff does not allege any independent basis for a violation of the FDCPA.

Plaintiff does not allege in her complaint that the Blatt firm was collecting interest at a rate that was not agreed to. However, even if it was, the Blatt firm is entitled to judgment based on the Bone Fide Error defense in the Act. 15 U.S.C. §1692k. The Blatt firm may rely on PRA's representations that the charges were legally valid and authorized under plaintiff's agreement with his original creditor. *See Jenkins v. Heintz*, 1996 WL 535167, *6 (N.D. Ill.

2

1996) *affirmed by Jenkins v. Heintz*, 124 F.3d 824, 828 (7th Cir. 1997). Therefore, as long as the Blatt firm was collecting at amounts represented by PRA to be valid, it has a bona fide error. Accordingly, there is no genuine issue of fact as to any allegations in plaintiff's complaint and the Blatt firm should be granted summary judgment.

## II. FACTUAL BACKGROUND

Plaintiff resides in Galesburg, Illinois, in the Central District of Illinois. *See* Plaintiff's Complaint attached to Defendants' Rule 56.1 Statement of Material Facts as Exhibit A ("Ex. A") ¶ 3. BLATT, HASENMILLER, LEIBSKER & MOORE LLC is a law firm that allegedly regularly collects debts owed by consumers and is a debt collector. (Ex. A ¶ 5.) PRA is an entity that purchases bad debts. (Ex. A ¶¶ 6, 7.) PRA acquired plaintiff's account after it was in default. (Ex. A ¶ 14.) PRA hired the Blatt Firm to collect the purported debt. (Ex. A ¶ 15.) An employee of PRA signed a sworn affidavit as to the correctness of the balances it was hiring the Blatt firm to collect. (Exhibit A of Ex. A.)

On August 25, 2003, the Blatt firm filed a lawsuit against plaintiff to collect the alleged debt. (Ex. A ¶ 16.) The complaint included a "statement of account" purportedly showing that the Blatt firm was attempting to collect interest on the account at a rate in excess of 9% per annum for the period after it was acquired. (Ex. A ¶ 18.) Plaintiff alleges that the balance of the plaintiff's account, when it was acquired by PRA, was $7,240.91. (Ex. A ¶ 18.) Plaintiff alleges that $6,051.12 in interest was added by PRA through April 4, 2003. (Ex. A ¶ 18.) Plaintiff alleges this interest exceeds a rate of 20%. (Ex. A ¶ 18.)

Plaintiff claims that PRA had no authority to charge or receive interest at more than 5% per annum simple interest on credit card debt which it purchases. (Ex. A at ¶ 29.) Plaintiff does

not allege that she ever paid any interest to PRA or the Blatt firm. It is plaintiff's theory that "[u]nder Illinois law, an 'unregulated entity' <u>cannot enter into an agreement</u> to charge more than 9% simple interest and <u>cannot charge more than 5% simple interest in the absence of an agreement</u>." (Ex. A ¶ 24) (emphasis added). Plaintiff, however, does not plead anything about the terms of her agreement with Associates Financial Services- the issuer of her credit card.

Plaintiff's complaint is an attempt to bootstrap a claim under the FDCPA to various provisions of the Interest Act. The Interest Act, however, in contrast to the FDCPA, governs lending activities - not collection of defaulted debt. The Illinois Interest Act does not apply to the Blatt firm's alleged collection activity nor control the rate of interest that the Blatt firm, a debt collector, may collect on a defaulted credit card account. *See* (Ex. E) *Vickey v. Asset Acceptance, LLC*, 2004 WL 1510026 (N.D. Ill. 2004); (Ex. F) *Olvera v.Blitt & Gaines*, 2004 WL 887372 (N.D. Ill. 2004); and (Ex. G) Judge Kennelly's Order in *Olvera* denying plaintiff's motion for reconsideration.

### III. THE BLATT FIRM IS ENTITLED TO SUMMARY JUDGMENT

#### A. Standards for Summary Judgment

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Lin v. T & H Machine, Inc.*, 191 F.3d 790 (7th Cir. 1999). On a motion for summary judgment, the nonmovant fails in task of demonstrating the presence of a genuine factual issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *Sweat v. Peabody Coal Co.*, 94 F.3d 301 (7th Cir. 1996). Not every dispute over facts can foil summary judgment; only ones that might affect the outcome of the suit under governing law. *Derrico v. Bungee Intern.*

*Mfg. Co.*, 989 F.2d 247 (7th Cir. 1993). Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

### B.  The Illinois Interest Act Does Not Govern The Blatt Firm's Conduct

The Blatt firm was attempting to collect plaintiff's credit card debt on behalf of PRA. Plaintiff admits that her account was in default when it was acquired by PRA. (Ex. A ¶ 14.) Plaintiff does not contest the amount of interest that Associates Financial Services, her creditor, charged on the account nor does plaintiff claim that there was anything wrong with her payment terms with Associates Financial Services. Plaintiff does not claim that there was any limit on the amount of interest that Associates Financial Services could charge on the account. It is only now, after she has defaulted on her account and the account has been referred to collection, that plaintiff argues that the interest rate on her defaulted account should be reduced to 5%. Under plaintiff's theory, the interest rate of her defaulted credit card debt should be reduced simply because her account was sold. In other words, had plaintiff's creditor, Associates Financial Services, kept her defaulted debt, she would owe more money because the interest on her account would accrue at a higher rate.

Plaintiff's theory is untenable and has been rejected several times. *See* (Ex. E) *Vickey v. Asset Acceptance, LLC*, 2004 WL 1510026 (N.D. Ill. 2004); (Ex. F) *Olvera v. Blitt & Gaines*, 2004 WL 887372 (N.D. Ill. 2004); and (Ex. G) Judge Kennelly's Order in *Olvera* denying plaintiff's motion for reconsideration. Plaintiff bases her theory on a self-serving interpretation of the Illinois Interest Act. The Act specifically addresses the rate of interest that lenders may charge - it does not address the rate of interest that debt collectors may collect after default.

5813043v1 839661

1. *Vickey* and *Olvera* **Expressly Reject Plaintiff's Claims in this Case**

In *Olvera*, 2004 WL 887372, *4 (N.D. Ill.), (Ex. F), Judge Kennelly held that an assignee of a credit card debt can charge the debtor the same rate of interest as authorized in the debtor's original credit agreement. The court determined that the Illinois Interest Act did not prevent an unlicensed entity from obtaining the rights to an account from a licensed creditor and then charging interest in excess of the statutory maximum. *Id.* These holdings were expressly agreed with by Judge Moran in *Vickey*, 2004 WL 1510026, *1 (N.D. Ill.) (Ex. E). The court in *Vickey* specifically cited to Judge Kennelly's Order on plaintiff's motion to reconsider, (Ex. G), that held:

> **Plaintiff argues that because the Interest Act specifics the interest rate assignees of retail installment agreements can charge, the Act must also regulate the interest all assignees of other credit agreements can change. But plaintiff's proposed statutory construction is neither supported by statute nor case law. The Court accordingly denies plaintiff's motion for reconsideration. We also note parenthetically what should be obvious from our ruling: so long as the interest that defendant sought to collect from plaintiff was "expressly authorized by the agreement creating the debt," ... then defendant's attempt to collect that amount was not unlawful under the FDCPA. (Ex. G.)**

The court in *Vickey* held that plaintiff presented no compelling reason to disregard the general rule that an assignee stands in the shoes of the assignor. *Vickey* (Ex. E) at *2. The Illinois Interest Act regulates only the origination of loans and not the assignment of rights. *Id.* To hold otherwise would allow a debtor to receive a better interest rate than was bargained for, simply because his account was assigned to an unlicensed entity. *Id.*

As the plaintiffs alleged in *Vickey* (Ex. E) and *Olvera* (Ex. F), plaintiff in this case alleges that defendant, violated the FDCPA by attempting to collect interest on behalf of PRA III, LLC, at rates in excess of what plaintiff alleges is allowed by the Illinois Interest Act. (Ex. A ¶ 31.)

As did the plaintiffs in *Vickey* and *Olvera*, plaintiff here alleges that the Illinois Interest Act prevents an unlicensed entity from obtaining the rights to an account from a licensed creditor and then charging interest in excess of the statutory maximum. (Ex. A ¶¶ 19-30.) These allegations are simply legally incorrect and have already been expressly rejected by two different judges in the Northern District of Illinois. Therefore, as the claims alleged in *Vickey* and *Olvera* were rejected by the court, plaintiff's claim in this case should be likewise rejected by this Court.

2. **Section 205/2 of the Illinois Interest Act Does Not Apply**

Plaintiff cites Section 205/2 of the Illinois Interest Act, but does not explain why this cited provision applies to the Blatt firm. (Ex. A ¶21). Section 205/2 provides:

> **Creditors** shall be allowed to receive interest at the rate of five (5) per centum per annum for all moneys after they become due on any **bond, bill, promissory note, or other instrument of writing**; on **money lent or advanced for the use of another**; on **money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance**; on **money received to the use of another and retained without the owner's knowledge**; and on **money withheld by an unreasonable and vexatious delay of payment**. In the absence of an agreement between the creditor and debtor governing interest charges, upon 30 days' written notice to the debtor, an assignee or agent of the creditor may charge and collect interest as provided in this Section on behalf of a creditor. 815 ILCS 205/2 (emphasis added).

This section specifically applies to the rate of interest that "creditors" may charge. It is undisputed that the Blatt firm is not plaintiff's creditor - plaintiff alleges that the Blatt firm is a debt collector under the FDCPA. Section 205/2 only applies to "an assignee or agent of the creditor" "in the absence of an agreement between the creditor and debtor governing interest charges." The Blatt firm was not an assignee or agent of plaintiff's credit card issuer. It is a law firm hired by PRA III, LLC to collect plaintiff's account.

7

Section 205/2 does not limit the rate of interest that a debt collector may charge on a defaulted credit card account. It applies to the rate of interest a <u>creditor</u> may charge on a bond, bill, promissory note, instrument of writing, on money lent or advanced for the use of another, on money due on the settlement of account, on money received to the use of another without the other's knowledge or on money withheld by an unreasonable and vexatious delay of payment. Nowhere in this language does the Act specify that it applies to a revolving credit account such as plaintiff's defaulted credit card account.

Accordingly, there is no basis for plaintiff's claim that the Blatt firm could only attempt to collect 5% interest on her defaulted credit card account under Section 205/2.

### 3. <u>Section 205/4.2 Does Not Apply</u>

In contrast to Section 205/2 which does not apply to credit cards, Section 205/4.2 specifically addresses revolving charge accounts.

It provides:

> **Revolving credit; billing statements; disclosures. On a revolving credit which complies with subparagraphs (a), (b), (c), (d) and (e) of this Section 4.2, it is lawful for <u>any bank</u> that has its main office or, after May 31, 1997, a branch in this State, a <u>state or federal savings and loan association</u> with its main office in this State, a <u>state or federal credit union</u> with its main office in this State, or a lender licensed under the Consumer Finance Act, the Consumer Installment Loan Act or the Sales Finance Agency Act, as such Acts are now and hereafter amended, <u>to receive or contract to receive and collect interest in any amount or at any rate agreed upon by the parties to the revolving credit arrangement</u>. It is lawful for any other lender to receive or contract to receive and collect interest in an amount or at any rate agreed upon by the parties to the revolving credit arrangement. It is lawful for any other lender to receive or contract to receive and collect interest in an amount not in excess of <u>1 ½% per month</u> of either the average daily unpaid balance of the principal of the debt during the billing cycle, or of the unpaid balance of the principal of the debt during the billing cycle, or of the unpaid balance of the debt on approximately the same day of the billing cycle.**

8

Section 205/4.2 provides that certain banks with their main office in Illinois, savings and loan associations with their main office in Illinois, credit unions with their main office in Illinois, or lenders licensed under the Consumer Finance Act, Consumer Installment Loan Act or Sales Finance Agency Act, may contract for any rate of interest on a revolving credit account that is agreed upon by the parties. The Section further provides that "[i]t is lawful for any other <u>lender</u> to receive and collect interest in an amount not in excess of 1 ½% per month..." In other words, Section 205/4.2 provides that it is lawful for any other <u>lender</u> who is not licensed under the Consumer Finance Act, Consumer Installment Loan Act or Sales Finance Agency Act, to contract to receive or collect interest at the rate of 1 ½% per month or <u>18% per annum</u> on a revolving charge account. Plaintiff says nothing in her complaint about this provision allowing "any other lender" who is not one of the enumerated entities, to receive and collect interest at 18% per annum. Plaintiff selectively focuses on individual provisions of the Interest Act, without reading the Interest Act as whole. In construing a statute, a court must read it as an integrated whole, so as to give meaning to all of its terms. *In re. McFarland,* 84 F.3d 943, 946-47 (7th Cir. 1996).

Section 405/4/2 applies to Illinois <u>lenders</u> and provides the rate of interest that certain Illinois <u>lenders</u> may charge on a revolving credit card account. Plaintiff attempts to apply the Interest Act beyond its intended scope. Plaintiff claims that since PRA is not a banking or lending entity, it had no "authority to charge or receive interest at more than 5% per annum simple interest on credit card debt which it purchases." (Ex. A at ¶ 29.)

However, Section 205/4.2 is silent as to the amount of interest that may be charged by debt buyers. Furthermore, debt collectors such as BLATT, HASENMILLER, LEIBSKER & MOORE LLC are even further removed from the scope of Section 205/4.2. There is nothing in

9

Section 205/4.2 that would prohibit a debt collector or subsequent debt buyer from collecting the amount of interest contracted for by the parties. Plaintiff does not claim that her lender – Associates Financial Services - violated the Illinois Interest Act. The terms of plaintiff's debt do not change simply because the debt is sold or goes into default. Nor does the Interest Act so provide. Accordingly, there is no basis for plaintiff's claim that a non-lender cannot collect interest over 5%.

### 4. Section 205/4 Does Not Apply

Plaintiff cites Section 205/4 but again does not explain how this section applies to the conduct alleged. (Ex. A ¶ 27.) Section 205/4 applies to written contracts. Like Section 205/2, this Section does not apply to a credit card account - it applies to written contracts in general. If Section 205/4 were read to apply to revolving credit arrangements, it would render Section 205/4.2 superfluous. Section 205/4 provides:

> **(1) In all <u>written contracts</u> it shall be lawful for the parties to stipulate or agree that 9% per annum, or any less sum of interest, shall be taken and paid upon every $100 of money <u>loaned</u> or in any manner due and owing from any person to any other person or corporation in this state, and after that rate for a greater or less sum, or for a longer or shorter time, except as herein provided.**
>
> **The maximum rate of interest that may lawfully be <u>contracted for</u> is determined by the law applicable thereto at the time the contract is made...**
> 815 ILCS 205/4 (emphasis added).

Section 205/4 does not apply to the Blatt firm because it applies only to money loaned or contracted for between the parties. The Blatt firm did not loan plaintiff money. The Blatt firm did not enter into a contract with the plaintiff. Accordingly, Section 205/4 has no relevance to this case.

10

### 5. Section 205/5 Does Not Apply

Plaintiff cites Section 205/5. (Ex. A ¶ 25.) This Section provides:

> **No person or corporation shall directly or indirectly <u>accept</u> or <u>receive</u>, in money, goods, discounts or thing in action, or in any other way, any greater sum or greater value for the loan, forbearance or discount of any money, goods or thing in action, than is expressly authorized by this Act or other laws of this State.**
> 815 ILCS 205/5 (emphasis added).

Plaintiff does not allege that the Blatt firm either accepted or received anything from him. He does not allege that he made a single payment on his account. Section 205/5 has no applicability to this case.

### C. The Blatt Firm has a Bona Fide Error Defense to any Alleged Violation and is Entitled to Rely on PRA's Representations

Even assuming the amount sought to be collected by the Blatt firm was not accurate, the Blatt firm has a bona fide error defense. The Blatt firm is entitled to rely on PRA's representations that the charges were legally valid and authorized under plaintiff's agreement with his original creditor. *See Jenkins v. Heintz, (Jenkins I)*, 1996 WL 535167, *6 (N.D. Ill. 1996), attached hereto as Exhibit H ("Ex. H"), *affirmed by Jenkins v. Heintz, (Jenkins II)*, 124 F.3d 824, 828 (7th Cir. 1997), attached hereto as Exhibit I ("Ex. I.")

In *Jenkins I*, (Ex. H), the defendant law firm was hired by a bank to collect amounts due from plaintiff arising out of force placed insurance premiums plaintiff owed the bank. *Jenkins I*, 1996 WL 535167, (Ex. H), at *1. The defendant law firm prepared a complaint and a verification statement for the purpose of filing a collection lawsuit against plaintiff. *Id.* at 2. The defendant law firm obtained a sworn statement from an agent of the bank verifying the validity of the balance the defendant law firm was seeking to collect prior to filing the collection

complaint. *Id.* After the bank's agent returned the executed verification, the defendant law firm filed the collection complaint. *Id.* Shortly thereafter, plaintiff filed a class action lawsuit against the defendant law firm claiming the defendant law firm violated the FDCPA when it attempted to collect charges from plaintiff that were unauthorized. *Id.* The defendant law firm filed a motion for summary judgment, claiming that if they had violated the FDCPA, the violation was the product of a bona fide error, therefore, under § 1692k(c), they were shielded from liability. *Id.* The court granted the defendant law firm's motion. *Id.* at 5.

In granting the defendant law firm's motion for summary judgment, the court held that the defendant law firm undertook steps to assure that all of the amounts they filed suit upon were accurate. *Id.* The court pointed out that the defendant law firm verified all the charges being collected (with a sworn verification from the bank) before authorizing the filing of a collection action. *Id.* Citing *Ducrest v. Alco Collections, Inc.* 1996 WL 416738, *3 (M.D. La.), the court stated,

> **A debt collector should be able to rely on the representation and implied warranty from its client that the amount was due under either the [agreement] or the law. The FDCPA does not require an independent investigation of the information provided by clients when a debt collector tries to collect a debt, nor does it require the debt collector to dispute the creditor's construction of a contract.** *Jenkins I*, (Ex. H), at *6.

In *Jenkins II*, (Ex. I), 124 F.3d at 835, the Seventh Circuit affirmed the lower court's granting of summary judgment in favor of the defendant law firm. In affirming, the court stated,

> **[The Act] does not say that the collector's status as an attorney should add a requirement of independent legal analysis for each aspect of the creditor's claim ... To require an attorney debt collector to conduct an independent investigation into the legal intricacies of the client's contract with the consumer would create a double standard for the bona fide error doctrine based upon the identity of the collector. The language of the FDCPA does not provide for such a standard.** *Jenkins II*, (Ex. I) at 834.

> **The district court correctly concluded that defendants' elaborate procedures meet this standard to avoid collecting unauthorized charges. They go so far as to insist that their client verify under oath that each of the charges was true and correct ... Defendants have satisfied their burden to prove this affirmative defense.** *Id.*

The Affidavit of Leon Moore is attached to Defendants' Rule 56.1 Statement of Material Facts as Exhibit B ("Ex. B"). The Affidavit demonstrates that BLATT, HASSENMILLER, LEIBSKER & MOORE LLC had procedures in place reasonably calculated to avoid errors in the filing of its collection actions. (Ex. B ¶¶ 7-12.) The Affidavit is evidence that the Blatt firm undertook comprehensive steps to assure that all of the amounts they filed suit upon were accurate. (Ex. B ¶¶ 7-12.) Like the defendant law firm in *Jenkins*, the Affidavit shows that the Blatt firm verified all charges- and furthermore, like the defendant law firm in *Jenkins*, even required an agent of their client, PRA III, LLC, to sign a sworn Affidavit of Indebtedness that authorized the filing of a collection action against plaintiff. (Ex. B ¶¶ 7-12.) Like the verification used by the defendant law firm in *Jenkins*, the Affidavit demonstrates that all proposed balances and charges are first verified with an agent of PRA III, LLC and that PRA III, LLC verifies, under oath, the accuracy of the balances and charges being alleged in the collection complaint. (Ex. B ¶¶ 7-12.) Like the defendant law firm in *Jenkins*, it is only after the sworn and signed Affidavit of Indebtedness is returned, that the complaint is filed. (Ex. B ¶¶ 12-14.) Furthermore, like the defendant law firm in *Jenkins*, the Blatt firm acted in good faith and had not received any notice that the charges being sought from CHERYL J. HUND were inaccurate. (Ex. B ¶ 17.) Therefore, in this case, like *Jenkins*, there are no issues of fact in regard to the amounts the Blatt firm sought to collect from plaintiff. The Blatt firm, like the defendant law firm in *Jenkins*, was and is entitled to rely on its clients', PRA III, LLC's representations that the

5813043v1 839661

amounts sought were accurate. The Illinois Interest Act does not limit the amount of interest that PRA III, LLC could charge. Accordingly, the Blatt firm should be granted summary judgment.

WHEREFORE, defendant, BLATT, HASENMILLER, LEIBSKER & MOORE LLC, respectfully requests that this Court enter judgment in its favor and against plaintiff.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By: _____

Attorneys for Defendant
BLATT, HASENMILLER, LEIBSKER & MOORE LLC

David M. Schultz
Todd P. Stelter
**HINSHAW & CULBERTSON LLP**
222 N. LaSalle Street, Suite 300
Chicago, Illinois 60601
(312) 704-3000
(312) 704-3001 (FAX)

14

5813043v1 839661

# See Case File for Exhibits